UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TIMEPAYMENT CORP., </br></br> Plaintiff, </br></br> v. </br></br> ALL PIECES FIT, INC., </br></br> Defendant. </br> _____ </br></br> ALL PIECES FIT, INC., </br></br> Counter Claimant, </br></br> v. </br></br> TIMEPAYMENT CORP., BRIGHTKYTE, LLC, and BRIAN ELLIS, </br></br> Counter Defendants. | CAUSE NO.: 2:24-CV-103-TLS-APR |

**OPINION AND ORDER**

This matter arises out of a contract dispute involving All Pieces Fit, Inc., BrightKyte, LLC, and TimePayment Corp. All Pieces Fit and BrightKyte entered into a Software Use Agreement for a term of three years under which BrightKyte was to provide software to All Pieces Fit in exchange for monthly payments. BrightKyte assigned its rights to payment under the Software Use Agreement to TimePayment; all contractual obligations remained with BrightKyte. When BrightKyte did not provide the promised software, All Pieces Fit stopped paying. TimePayment then filed this breach of contract action to recover from All Pieces Fit the remaining payments allegedly owed under the contract. All Pieces Fit filed Counterclaims, including against TimePayment for breach of contract by failing to provide the software and for conspiracy to commit fraud by conspiring with BrightKyte and Ellis to fraudulently induce All

Pieces Fit to enter into the Software Use Agreement knowing that BrightKyte was not capable of providing the promised software.

This matter is now before the Court on Counter Defendant TimePayment Corp.'s Motion to Dismiss Counterclaims [ECF No. 23], which is fully briefed. For the following reasons, the Court grants the motion to dismiss, dismissing both counterclaims against TimePayment but granting All Pieces Fit leave to file an amended counterclaim against TimePayment for civil conspiracy to commit fraud consistent with this Opinion and Order.

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (citing Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997)). When reviewing a complaint attacked by a Rule 12(b)(6) motion, a court construes the complaint in the light most favorable to the non-moving party, accepts the factual allegations as true, and draws all inferences in the non-moving party's favor. *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "It is the defendant's burden to establish the complaint's insufficiency." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are

referred to in the plaintiff's complaint and are central to his claim." *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006) (cleaned up).

## PROCEDURAL BACKGROUND

On March 15, 2024, Plaintiff TimePayment Corp. filed a one-count Complaint [ECF No. 1] bringing a breach of contract claim against Defendant All Pieces Fit, Inc. for failing to tender monthly installment payments under a June 27, 2023 Service Initiation Setup and Software Use Agreement (Software Use Agreement), *see* Ex. A, ECF No. 1-1, and seeking monetary damages in the amount of $242,131.68 plus interest, late fees, and attorney fees. TimePayment is a Delaware Corporation with its principal place of business in Massachusetts, and All Pieces Fit is an Indiana corporation with its principal place of business in Indiana. *See* Compl. ¶¶ 1, 2.

On May 31, 2024, All Pieces Fit filed an Answer, Affirmative Defenses, and Counterclaims [ECF No. 14], naming as Counter Defendants TimePayment Corp., BrightKyte, LLC, and Brian Ellis. The Counterclaims are for fraudulent inducement against BrightKyte and Ellis (Count I); conspiracy to commit fraud against TimePayment, BrightKyte, and Ellis (Count II); breach of contract against TimePayment and BrightKyte (Count III); and unjust enrichment against BrightKyte (Count IV).

## FACTUAL BACKGROUND[1]

All Pieces Fit provides services assisting autistic youth. Countercl. ¶ 1, ECF No. 14. Brian Ellis and BrightKyte approached All Pieces Fit about joining their "BrightKyte Growth Accelerator Program." *Id.* ¶ 11. Ellis and BrightKyte promised that they had developed a software program to assist with patient intake, staff recruiting and retention, clinical optimization, and billing and financial management; that BrightKyte would assist with access to capital growth; and that All Pieces Fit would hit significant growth projections within the first

---

[1] These facts are taken from the Counterclaim and the documents attached to and referenced in the Complaint and the Counterclaim.

few months. *Id.* ¶ 12. To join the "Alpha Cohort" of the program, Ellis asked All Pieces Fit to sign three agreements. *Id.* ¶ 13.

Relevant here, All Pieces Fit signed the June 27, 2023 Software Use Agreement with BrightKyte by which BrightKyte was to provide All Pieces Fit with access to and use of the software programs. Compl. Ex. A, ECF No. 1-1.[2] In return, All Pieces Fit was to make 36 monthly installment payments to BrightKyte in the amount of $6,655.63, plus tax, per month. *Id.* The Software Use Agreement contains an "Assignment" clause, which provides in relevant part:

> BrightKyte may at any time and without notice to [All Pieces Fit] assign all or part of any interest in this [Software Use Agreement] and resulting Payments. In such an event, all of BrightKyte's rights, powers, and privileges contained herein so assigned shall inure to the benefit of and may be exercised by or on behalf of such assignee ("Assignee"), but the Assignee shall not be liable for or be required to perform any of BrightKyte's obligations to [All Pieces Fit]. The right of the Assignee to the assigned Payments and the right to exercise any and all of BrightKyte's rights hereunder shall not be subject to any defense, counterclaim, or set-off which [All Pieces Fit] may have or assert against . . . BrightKyte, and [All Pieces Fit] hereby agrees that it will not assert any such defenses, set-offs, counterclaims, and claims against the Assignee.

Compl. Ex. A, ¶ 3.

Pursuant to a previously executed February 24, 2023 Master Purchase Agreement between TimePayment and BrightKyte, BrightKyte assigned all of its interest in the Software Use Agreement to TimePayment. *See* Compl. ¶ 9; Countercl. ¶ 19; Mot. Ex. A, ECF No. 24-1. TimePayment then collected All Pieces Fit's money from a bank account BrightKyte had set up for the benefit of All Pieces Fit. Countercl. ¶ 20. However, the program and software did not exist. *Id.* ¶ 14. Only a partial program called "FlightPath" existed, and it did not have the functionality promised to All Pieces Fit. *Id.* ¶ 15. After the second payment, All Pieces Fit stopped making monthly payments. Compl. ¶ 15. BrightKyte and TimePayment terminated All

---

[2] The June 27, 2023 Software Use Agreement is attached to the Complaint. ECF No. 1-1. In it Answer, All Pieces Fit admits that it executed the June 27, 2023 Software Use Agreement; although it contends that it was fraudulently induced to do so. Ans. ¶ 6, ECF No. 14.

Pieces Fit's access to the FlightPath software without notice, resulting in the loss of All Pieces Fit's valuable customer information. Countercl. ¶ 29. All Pieces Fit alleges:

> TimePayment knew or should have known that [All Pieces Fit] never received the promised software under the Software Use Agreement. Instead, TimePayment failed to ask [All Pieces Fit] if it had received the software described in the Software Use Agreement. [All Pieces Fit] did not confirm that it had the BrightKyte Software, only a small subset of the promised services in a software package known as "FlightPath."

*Id.* ¶ 28.

In support of the conspiracy claim, All Pieces Fit alleges that Ellis and BrightKyte coordinated with TimePayment to obtain money from TimePayment in exchange for getting companies, such as All Pieces Fit, to enter into Software Use Agreements. *Id.* ¶ 18. TimePayment knew or should have known that BrightKyte was not capable of providing the promised services, yet it encouraged BrightKyte and Ellis to enter into the Software Use Agreement with All Pieces Fit in exchange for a payment to BrightKyte. *Id.* ¶ 38. Once BrightKyte fraudulently induced All Pieces Fit to enter into the Software Use Agreement, BrightKyte would assign the agreement to TimePayment in exchange for a lump-sum payment. *Id.* ¶ 39. TimePayment would then collect money from All Pieces Fit, even though neither BrightKyte nor TimePayment could or would provide the promised software. *Id.* ¶ 40.

## ANALYSIS

TimePayment seeks dismissal of All Pieces Fit's counterclaims for breach of contract and conspiracy to commit fraud pursuant to Rule 12(b)(6) for failure to state a claim.

### A.   **Breach of Contract (Count III)**

Under Indiana law, "[t]he essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages." *Berg v. Berg*, 170 N.E.3d 224, 231 (Ind. 2021). The interpretation of a written contract is a question of law. *Dunn v.*

5

*Meridian Mut. Ins.*, 836 N.E.2d 249, 251 (Ind. 2005). "If its terms are clear and unambiguous, courts must give those terms their clear and ordinary meaning." *Id.*

In Count III against TimePayment for breach of the Software Use Agreement, All Pieces Fit alleges that it entered into the Software Use Agreement with BrightKyte, Countercl. ¶ 44; it performed under the Software Use Agreement by making initial payments, *id.* ¶ 45; BrightKyte and "its apparent assignee TimePayment" breached the Software Use Agreement by failing to provide the promised software, *id.* ¶ 46; and All Pieces Fit was damaged by BrightKyte and TimePayment because it made payments for software that it never received and was further damaged by the termination of its access to its customer information, *id.* ¶ 47.

First, TimePayment argues that this breach of contract claim is barred by the explicit terms of the Software Use Agreement that preclude All Pieces Fit from asserting claims against TimePayment for BrightKyte's alleged failure to provide the promised services. Indeed, the Assignment clause of the Software Use Agreement provides that TimePayment, as the assignee, "shall not be liable for or be required to perform any of BrightKyte's obligations to [All Pieces Fit]." The Assignment clause further provides that TimePayment's right to the assigned payments and right to exercise BrightKyte's rights under the Software Use Agreement "shall not be subject to any defense, counterclaim, or set-off which [All Pieces Fit] may have or assert against [BrightKyte]." All Pieces Fit also agreed under the Assignment clause "that it will not assert any such defenses, set-offs, counterclaims, and claims against" TimePayment. This language is clear and unambiguous. All Pieces Fit cannot pursue TimePayment, as assignee, for a claim against BrightKyte. Any breach of contract claim regarding BrightKyte's failure to deliver the promised software must be brought against BrightKyte.

6

In response, All Pieces Fit argues that the release provision of the Assignment clause has no effect because All Pieces Fit was fraudulently induced to sign the Software Use Agreement. "The general principal that fraud vitiates all contracts applies to releases." *Prall v. Ind. Nat'l Bank*, 627 N.E.2d 1374, 1378 (Ind. Ct. App. 1994). If fraud "induced or produced the execution" of a release of liability, that release will be void. *Id.* at 1379 (citation omitted). However, as argued by TimePayment, if All Pieces Fit was fraudulently induced to sign the Software Use Agreement, then not only is the release provision of the Assignment clause within the Software Use Agreement void but so is the Software Use Agreement itself. In that case, All Pieces Fit would still have no breach of contract claim against TimePayment.

Regardless, TimePayment owed no contractual duty to All Pieces Fit. Duties under assigned contracts may be delegated, "but an assignment of contractual rights 'does not [automatically] carry with it the delegation of contractual duties.'" *Brown v. Ind. Nat'l Bank*, 476 N.E.2d 888, 895 n. 4 (Ind. Ct. App. 1985) (quoting *Univ. Casework Sys., Inc. v. Bahre*, 362 N.E.2d 155, 160 (Ind. Ct. App. 1977)). Said differently, the contractual language determines the scope of the rights assigned and the duties delegated. Under the terms of the Software Use Agreement, only BrightKyte's right to the payments was assigned to TimePayment, and TimePayment is "not liable for or . . . required to perform any of BrightKyte's obligations to [All Pieces Fit]." Compl. Ex. A, ¶ 3. Thus, TimePayment did not have any obligation under the Software Use Agreement to deliver the software to All Pieces Fit; delivery of the software was BrightKyte's obligation. All Pieces Fit's contract claim fails because TimePayment did not owe it a duty to deliver the software.

In response, All Pieces Fit contends that TimePayment has misstated the plain language of the Software Use Agreement regarding duty. However, All Pieces Fit quotes not from the

7

Software Use Agreement but from § 5.1 of the Master Purchase Agreement between BrightKyte and TimePayment and then quotes only the portion of § 5.1 that requires TimePayment to "generally provide all administration for each Purchased Transaction." Mot. Ex. A, § 5.1. A "Purchased Transaction" is defined in the Master Purchase Agreement as a Software Use Agreement sold to TimePayment. *Id.* § 1.1. All Pieces Fit reasons that TimePayment failed to provide the necessary "administration" of the Software Use Agreement by not providing the promised software and then by terminating unexpectedly All Pieces Fit's access to the limited software. As argued by TimePayment, the plain language of the introductory text of § 5.1 contradicts this interpretation:

> The transfer and assignment contemplated herein extends to all of [BrightKyte's] right, title and interest in and to the Purchased Assets, together with all of [BrightKyte's] rights, powers and privileges (*but not its obligations*) under such Purchased Transaction. Both parties expressly agree that: [TimePayment] . . . shall bill for, collect and receive all Agreement Payments; shall exercise all other rights, powers and privileges of the lessor under each Purchased Transaction, and generally provide all necessary administration for each Purchased Transaction.

Mot. Ex. A, § 5.1 (emphasis added). Moreover, § 2.1 of the Master Purchase Agreement, which governs the assignment of the Purchased Assets, similarly provides that "[BrightKyte] hereby agrees that [BrightKyte] shall not be relieved, and [TimePayment] does not assume, any of [BrightKyte's] obligations under any Purchased Transaction or the Purchased Assets." *Id.* § 2.1(b). Thus, both the Software Use Agreement and the Master Purchase Agreement consistently provide that BrightKyte's obligations were not delegated to TimePayment.

Accordingly, the Court grants the motion to dismiss All Pieces Fit's breach of contract claim against TimePayment in Count III of the Counterclaim.

B.   **Conspiracy to Commit Fraud (Count II)**

"A civil conspiracy is a combination of two or more persons who engage in concerted action to accomplish an unlawful purpose or to accomplish some lawful purpose by unlawful means." *Boyle v. Anderson Fire Fighters Ass'n Loc. 1262, AFL-CIO*, 497 N.E.2d 1073, 1079 (Ind. Ct. App. 1986) (citing *Indianapolis Horse Patrol, Inc. v. Ward*, 217 N.E.2d 626 (Ind. 1966)); *see Am. Heritage Banco, Inc. v. McNaughton*, 879 N.E.2d 1110, 1115 n.3 (Ind. Ct. App. 2008) (cleaned up). Under Indiana law, "there is no independent cause of action in tort based solely on the existence of a civil conspiracy." *Boyle*, 497 N.E.2d at 1079 (citing *Ward*, 217 N.E.2d 626); *see Am. Heritage Banco*, 879 N.E.2d at 1115 (citing *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1234 (Ind. 1994)). "Rather, the cause of action is for the damages that result from the conspiracy." *Boyle*, 497 N.E.2d at 1079 (citing *Ward*, 217 N.E.2d 626); *Am. Heritage Banco*, 879 N.E.2d at 1115 n.3 (citing *Huntington Mortg. Co. v. DeBrota*, 703 N.E.2d 160, 168 (Ind. Ct. App. 1998)). "Unlike criminal conspiracy, the gist of a civil conspiracy is not the unlawful agreement, but the damage resulting from that agreement." *K.M.K. v. A.K.*, 908 N.E.2d 658, 663–64 (Ind. Ct. App. 2009) (quoting *Allen v. Great Am. Res. Ins.*, 766 N.E.2d 1157, 1168 (Ind. 2002)).

"Each participant in the conspiracy may be held responsible as a joint tortfeasor for damages caused by the wrongful or contemptuous acts regardless of the degree of active participation." *Boyle*, 497 N.E.2d at 1079 (cleaned up). Here, the underlying tort of "[f]raudulent inducement occurs when a party is induced through fraudulent misrepresentations to enter into a contract." *Reitenour v. M/I Homes of Ind., L.P.*, 239 N.E.3d 56, No. 23A-CT-3090, 2024 WL 3085306, at *2 (Ind. Ct. App. June 21, 2024) (quoting *Am.'s Directories, Inc. v. Stellhorn One Hour Photo, Inc.*, 833 N.E.2d 1059, 1068 (Ind. Ct. App. 2005)). A claim of fraudulent

9

inducement requires proof of the same elements as a fraud claim: "(1) a material misrepresentation of past or existing fact which (2) was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) which proximately caused the injury or damage complained of." *Id.* (quoting *Lawyers Title Ins. Corp. v. Pokraka*, 595 N.E.2d 244, 249 (Ind. 1992); citing *Massey v. Conseco Servs., LLC*, 879 N.E.2d 605, 611 (Ind. Ct. App. 2008)).

All Pieces Fit's conspiracy claim is subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b) because the factual allegations of the counterclaim sound in fraud. *See Borsellino v. Goldman Sachs Grp.*, 477 F.3d 502, 507 (7th Cir. 2007) (addressing an Illinois state law claim of civil conspiracy to commit fraud under Rule 9(b) because "Rule 9(b) applies to 'averments of fraud,' not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations"). Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To meet this standard, a plaintiff must allege "the 'who, what, when, where, and how' of the alleged fraud." *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 401 (7th Cir. 2009) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). This includes "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *GE Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997) (cleaned up).

A plaintiff must provide more than conclusory allegations to satisfy Rule 9(b)'s requirement that circumstances of fraud be pleaded "with particularity." *Robin v. Arthur Young & Co.*, 915 F.2d 1120, 1127 (7th Cir. 1990) (quoting *DiLeo*, 901 F.2d at 627); *United States ex*

*rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) ("[P]laintiffs must use some means of injecting precision and some measure of substantiation into their allegations of fraud." (cleaned up)). "This heightened pleading requirement is a response to the great harm to the reputation of a business firm or other enterprise a fraud claim can do." *Borsellino*, 477 F.3d at 507.

Count II for conspiracy to commit fraud alleges that TimePayment with BrightKyte and Ellis conspired to fraudulently induce All Pieces Fit to enter in the Software Use Agreement, *id.* ¶ 37; TimePayment knew or should have known that BrightKyte was not capable of providing the promised services yet encouraged BrightKyte and Ellis to enter into the Software Use Agreement in exchange for payment to BrightKyte, *id.* ¶ 38; once BrightKyte fraudulently induced All Pieces Fit to enter into the Software Use Agreement, BrightKyte would assign the agreement to TimePayment in exchange for a lump-sum payment, *id.* ¶ 39; and TimePayment would then collect money from All Pieces Fit even though neither BrightKyte nor TimePayment could or would provide the promised software, *id.* ¶ 40.

TimePayment argues that this conspiracy to commit fraud claim fails to meet the heightened pleading requirements of Rule 9(b) as to the alleged coordination between TimePayment and BrightKyte to commit fraud. The Court agrees. All Pieces Fit has not alleged with specificity the who, what, when, where, or how of any such agreement to commit fraud between someone from TimePayment and Ellis from BrightKyte or a basis for TimePayment to know that BrightKyte could not and did not provide the promised software. *See Borsellino*, 477 F.3d at 509 (finding a failure to allege civil conspiracy under Illinois law because "the complaint tells us nothing about the nature of the purported agreement to defraud the plaintiffs, such as when it was made or which individuals at Goldman Sachs arranged the conspiracy" and the

11

"factual allegations as to Goldman Sachs are simply that it participated in the testing of [a software program] for SEC compliance and that it did not invest in [the program] until [the program's] principals had cut off business ties with [the plaintiff]"); *see also Zimmer, Inc. v. Stryker Corp.*, No. 3:14-CV-152, 2014 WL 3866454, at *11 (N.D. Ind. Aug. 6, 2014) ("[I]f [the plaintiff] proves a civil conspiracy in the commission of one of the other torts it has properly alleged, then Stovall and Stryker would both be responsible in damages for the actions of one another.").

First, the general conspiracy allegations in Paragraphs 18 and 37 of the Counterclaim are not sufficiently specific. Paragraph 18 provides that "Ellis and BrightKyte had coordinated with TimePayment to obtain money from TimePayment in exchange for getting companies such as [All Pieces Fit] to enter into [the Contract]," and Paragraph 37 provides that "TimePayment together with BrightKyte and Ellis conspired to fraudulently induce [All Pieces Fit] to enter into the [Software Use Agreement]." Countercl. ¶¶ 18, 37. These allegations do not identify who at TimePayment allegedly "coordinated" or "engaged in concerted action" to commit fraud with Ellis at BrightKyte or where or when this agreement took place. As argued by TimePayment, Paragraph 18 alleges a facially legitimate business transaction, and Paragraph 37 is a bare allegation of the legal claim.

All Pieces Fit responds that Paragraph 19 of the Counterclaim along with the Master Purchase Agreement between TimePayment and BrightKyte provide the necessary allegations. They do not. Paragraph 19 simply alleges that "[o]nce [All Pieces Fit] executed the Software Use Agreement, BrightKyte apparently assigned the Software Use Agreement to TimePayment." Countercl. ¶ 19. On its face, this is an allegation of a legitimate business transaction. Similarly, the Master Purchase Agreement is an agreement for the assignment of contract rights. Neither

12

shows any agreement between TimePayment and BrightKyte for BrightKyte and All Pieces Fit to enter into the Software Use Agreement with TimePayment's knowledge that BrightKyte did not have the promised software.

In addition, "[a]lthough states of mind may be pleaded generally under [Rule 9(b)], the rule requires plaintiffs to plead 'with particularity' any 'circumstances constituting fraud.'" *Robin*, 915 F.2d at 1127 (quoting Rule 9(b); citing *DiLeo*, 901 F.2d at 627). The allegations in Paragraph 38 that TimePayment knew or should have known that BrightKyte could not provide the software and in Paragraph 28 that TimePayment knew or should have known that All Pieces Fit never received the promised software are nothing more than "rote conclusions." *See id.* ("Assertions that [the defendant] had knowledge that the prospectus was false and misleading and that [the defendant] knowingly and intentionally aided and abetted the primary violators are nothing more than rote conclusions"). "[W]hile [TimePayment's] mental state need not be pleaded with particularity, 'the complaint must still afford a basis for believing that [All Pieces Fit] could prove scienter.'" *Id.* (quoting *DiLeo*, 901 F.2d at 629). All Pieces Fit fails to allege facts to explain how TimePayment would have this knowledge. *Compare id.* (finding "bare allegations" that the defendant "should have known that the prospectus was false and misleading also fail to allege scienter"), *with United States v. Molina Healthcare of Ill., Inc.*, 17 F.4th 732, 741–42 (7th Cir. 2021) (finding the allegations of fraudulent inducement sufficient to show that the defendant never intended to perform the promised act because they included details about statements made by the defendant's chief operating officer that "staff did not have the ability or licensure to render [the] services").

All Pieces Fit reasons that "Paragraph 28 details the promises made under the Software Use Agreement." Resp. 9, ECF No. 26. But as discussed above in the context of the breach of

13

contract claim, those were promises made to All Pieces Fit by BrightKyte, not by TimePayment, and BrightKyte's duties under the contract were not delegated to TimePayment. All Pieces Fit also argues that allegations of fraud have been found to be sufficient where the plaintiff provides specific instances of the allegedly fraudulent practices, citing *United States ex rel. Mamalakis v. Anesthetix Management LLC*, 20 F.4th 295, 302–03 (7th Cir. 2021). However, in that case, the plaintiff offered ten discrete, dated examples of the alleged medical billing fraud that were "detailed, identifying specific doctors and procedures and describing why each procedure should not have been billed as medically directed." *Id.* at 303. The court found that the "representative examples provide a particularized basis from which to plausibly infer that at least on these occasions, [the defendant] presented false claims to the government." *Id.* In contrast, All Pieces Fit has identified only the instance of fraud allegedly perpetrated against it. The conclusory allegations of TimePayment's knowledge and intent do not satisfy Rule 9(b)'s requirements that fraud be pleaded with particularity. *See Robin*, 915 F.2d at 1127.

Finally, TimePayment argues that Paragraphs 39 and 40 of Count II lack specificity as to when, where, and how TimePayment refused to provide the software to All Pieces Fit. Paragraph 39 alleges that "[o]nce BrightKyte fraudulently induced [All Pieces Fit] to enter in the [Software Use Agreement], BrightKyte would assign the agreement to TimePayment in exchange for a lump sum payment," and Paragraph 40 alleges that, "[o]nce assigned to TimePayment, TimePayment would collect money from [All Pieces Fit], despite the fact that neither BrightKyte nor TimePayment could or would provide the promised software." Compl. ¶¶ 39, 40. The Court finds that these paragraphs provide specific factual allegations about how the alleged scheme worked regarding BrightKyte's failure to provide the software to All Pieces Fit, for which TimePayment would be liable if a conspiracy is proven. *See Boyle*, 497 N.E.2d at 1079 ("All

those who aid and abet in the commission of an intentional tort are equally liable with the party directly committing it.").

While All Pieces Fit has alleged facts to show that TimePayment and BrightKyte acted in concert to enter into the Master Purchase Agreement—a facially legitimate business transaction, All Pieces Fit has not alleged facts with the requisite specificity under Rule 9(b) to state a claim that TimePayment acted in concert with Ellis and BrightKyte to commit fraud. Thus, the Court grants the motion to dismiss the conspiracy to commit fraud claim against TimePayment in Count III of the Counterclaim. However, the Court grants All Pieces Fit's request for an opportunity to amend the counterclaim to sufficiently allege its conspiracy claim. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); ! *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015) ("Unless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." (citation omitted)).

## CONCLUSION

For the reasons stated above, the Court hereby GRANTS Counter Defendant TimePayment Corp.'s Motion to Dismiss Counterclaims [ECF No. 23], dismissing the breach of contract and conspiracy to commit fraud counterclaims (Counts II and III) brought against TimePayment by All Pieces Fit. The Court GRANTS Counter Claimant All Pieces Fit up to and including February 26, 2025, in which to file an amended counterclaim for conspiracy to commit fraud against TimePayment consistent with this Opinion and Order.

SO ORDERED on January 28, 2025.

        s/ Theresa L. Springmann  
JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT