UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TIMEPAYMENT CORP., </br></br> Plaintiff, </br></br> v. </br></br> ALL PIECES FIT, INC., </br></br> Defendant. </br> _____ </br></br> ALL PIECES FIT, INC., </br></br> Counter Claimant, </br></br> v. </br></br> TIMEPAYMENT CORP., BRIGHTKYTE, LLC, and BRIAN ELLIS, </br></br> Counter Defendants. | CAUSE NO.: 2:24-CV-103-TLS-APR |

**OPINION AND ORDER**

This matter arises out of a contract dispute involving All Pieces Fit, Inc., BrightKyte, LLC, Brian Ellis (manager of BrightKyte), and TimePayment Corp. All Pieces Fit and BrightKyte entered into a Software Use Agreement for a term of three years under which BrightKyte was to provide software to All Pieces Fit in exchange for monthly payments. BrightKyte assigned its rights to payment under the Software Use Agreement to TimePayment; all contractual obligations remained with BrightKyte. When BrightKyte did not provide the promised software, All Pieces Fit stopped paying. TimePayment then filed this breach of contract action to recover from All Pieces Fit the remaining payments allegedly owed under the contract. All Pieces Fit filed Counterclaims, including against TimePayment for breach of contract and for conspiracy to commit fraud by conspiring with BrightKyte and Ellis to

fraudulently induce All Pieces Fit to enter into the Software Use Agreement knowing that BrightKyte was not capable of providing the promised software. The Court granted TimePayment's motion to dismiss the Counterclaims but granted All Pieces Fit leave to refile the conspiracy to commit fraud counterclaim, which All Pieces Fit filed in Count I of its Amended Third Party Complaint/Counterclaim.

This matter is now before the Court on Counter Defendant TimePayment Corp.'s Motion to Dismiss Amended Counterclaim [ECF No. 57], which is fully briefed. For the following reasons, the Court grants the motion to dismiss, dismissing the claim for conspiracy to commit fraud in Count I of the Third Party Complaint/Counterclaim.

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (citing Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997)). When reviewing a complaint attacked by a Rule 12(b)(6) motion, a court construes the complaint in the light most favorable to the non-moving party, accepts the factual allegations as true, and draws all inferences in the non-moving party's favor. *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "It is the defendant's burden to establish the complaint's insufficiency." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are

2

referred to in the plaintiff's complaint and are central to his claim." *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006) (cleaned up).

## PROCEDURAL BACKGROUND

On March 15, 2024, Plaintiff TimePayment Corp. filed a one-count Complaint [ECF No. 1] bringing a breach of contract claim against Defendant All Pieces Fit, Inc. for failing to tender monthly installment payments under a June 27, 2023 Service Initiation Setup and Software Use Agreement (Software Use Agreement), *see* Compl. Ex. A, ECF No. 1-1, and seeking monetary damages in the amount of $242,131.68 plus interest, late fees, and attorney fees. TimePayment is a Delaware Corporation with its principal place of business in Massachusetts, and All Pieces Fit is an Indiana corporation with its principal place of business in Indiana. *See* Compl. ¶¶ 1, 2.

On May 31, 2024, All Pieces Fit filed an Answer, Affirmative Defenses, and Counterclaims [ECF No. 14] under the Court's supplemental jurisdiction, naming as Counter Defendants TimePayment Corp., BrightKyte, LLC, and Brian Ellis. On January 28, 2025, the Court granted TimePayment Corp.'s motion to dismiss the two Counterclaims against it but granted All Pieces Fit leave to refile its conspiracy to commit fraud claim. ECF No. 47. On February 26, 2025, All Pieces Fit filed an Amended Third Party Complaint and Countercomplaint [ECF No. 56] bringing claims of conspiracy to commit fraud against TimePayment, BrightKyte, and Ellis (Count I); fraudulent inducement against BrightKyte and Ellis (Count II); breach of contract against BrightKyte (Count III); and unjust enrichment against BrightKyte (Count IV) in the alternative to Counts I–III.

## FACTUAL BACKGROUND[1]

All Pieces Fit provides services for autistic youth. Am. Countercl. ¶ 1, ECF No. 56. Brian Ellis (manager of BrightKyte) and BrightKyte approached All Pieces Fit about joining their

---

[1] These facts are taken from the Amended Counterclaim and the documents attached to and referenced in the Complaint and the Amended Counterclaim.

3

"BrightKyte Growth Accelerator Program." *Id.* ¶¶ 7, 11. Ellis and BrightKyte promised All Pieces Fit that they had developed a software program to assist with patient intake, staff recruiting and retention, clinical optimization, and billing and financial management; that BrightKyte would assist with access to capital growth; and that All Pieces Fit would hit significant growth projections within the first few months. *Id.* ¶ 12. To join the "Alpha Cohort" of the program, Ellis asked All Pieces Fit to sign three agreements. *Id.* ¶ 13.

Relevant here, All Pieces Fit signed the June 27, 2023 Software Use Agreement with BrightKyte by which BrightKyte was to provide All Pieces Fit with access to and use of the software programs. Compl. Ex. A, ECF No. 1-1.[2] In return, All Pieces Fit was to make 36 monthly installment payments to BrightKyte in the amount of $6,655.63, plus tax, per month. *Id.* ¶ 2. The Software Use Agreement contains an "Assignment" clause, which provides in relevant part:

> BrightKyte may at any time and without notice to [All Pieces Fit] assign all or part of any interest in this [Software Use Agreement] and resulting Payments. In such an event, all of BrightKyte's rights, powers, and privileges contained herein so assigned shall inure to the benefit of and may be exercised by or on behalf of such assignee ("Assignee"), but the Assignee shall not be liable for or be required to perform any of BrightKyte's obligations to [All Pieces Fit]. The right of the Assignee to the assigned Payments and the right to exercise any and all of BrightKyte's rights hereunder shall not be subject to any defense, counterclaim, or set-off which [All Pieces Fit] may have or assert against . . . BrightKyte, and [All Pieces Fit] hereby agrees that it will not assert any such defenses, set-offs, counterclaims, and claims against the Assignee.

*Id.* ¶ 3.

Pursuant to a previously executed February 24, 2023 Master Purchase Agreement between TimePayment and BrightKyte, BrightKyte then assigned all of its interest in the Software Use Agreement to TimePayment. *See* Compl. ¶ 9; Am. Countercl. ¶ 20; Mot. Ex. B,

---

[2] The June 27, 2023 Software Use Agreement is attached to the Complaint. Compl. Ex. A, ECF No. 1-1. In it Answer, All Pieces Fit admits that it executed the June 27, 2023 Software Use Agreement; although it contends that it was fraudulently induced to do so. Ans. ¶ 6, ECF No. 14. Exhibit 1 to the Amended Counterclaim is an earlier version of the Software Use Agreement dated April 18, 2023. Am. Countercl. Ex. 1, ECF No. 56-1.

4

ECF No. 58-2. BrightKyte later knowingly allowed TimePayment to collect money from a BrightKyte bank account set up for the benefit of All Pieces Fit and that held All Pieces Fit's funds. Am. Countercl. ¶ 22. However, the BrightKyte Growth Accelerator Program and software did not exist; as a result, none of the initial growth projections occurred, causing All Pieces Fit significant financial harm and delays. *Id.* ¶ 14. Only a partial program called "FlightPath" existed, and it did not have the promised functionality. *Id.* ¶ 15. After the second payment, All Pieces Fit stopped making monthly payments. Compl. ¶ 15. BrightKyte and TimePayment terminated All Pieces Fit's access to the FlightPath software without notice, resulting in All Pieces Fit's loss of valuable customer information. Am. Countercl. ¶ 32. All Pieces Fit alleges:

> TimePayment knew or should have known that [All Pieces Fit] never received the promised software under the Software Use Agreement. Instead, TimePayment failed to ask [All Pieces Fit] if it had received the software described in the Software Use Agreement. [All Pieces Fit] did not confirm that it had the BrightKyte Software, only a small subset of the promised services in a software package known as "FlightPath."

*Id.* ¶ 31.[3]

All Pieces Fit alleges that Jay Haverty (President and CEO of TimePayment) with TimePayment and Ellis with BrightKyte conspired to fraudulently induce All Pieces Fit to enter into the Software Use Agreement. *Id.* ¶¶ 18, 34. In support of the conspiracy claim, All Pieces Fit alleges that Ellis and BrightKyte conspired with Haverty "to pay TimePayment for inducing companies such as All Pieces Fit to enter into Software Use Agreements." *Id.* ¶ 18. All Pieces Fit alleges that Ellis, Haverty, and Jeanette Boyle (Vice President of Operations for TimePayment) ensured that TimePayment could collect under BrightKyte's software use agreements, and shortly after the Software Use Agreement was executed with All Pieces fit, BrightKyte assigned

---

[3] In its motion, TimePayment cites its Complaint for its allegation that, "[i]n connection with the assignment, TimePayment conducted a verification call to verify that All Pieces Fit received the software provided for under the Software Use Agreement from BrightKyte." Mot. to Dismiss Br. 3, ECF No. 58 (citing Complaint ¶ 12, ECF No. 1). However, because on a Rule 12(b)(6) motion to dismiss the Court considers the allegations of the Amended Counterclaim in the light most favorable to nonmovant All Pieces Fit, the Court does not consider these allegations of the Complaint that contradict the factual allegations of the Amended Counterclaim.

5

its rights under the Software Use Agreement to TimePayment. *Id.* ¶¶ 19, 20. All Pieces Fit alleges that Haverty and TimePayment and Ellis and BrightKyte "knew or should have known that BrightKyte could not provide the promised services, yet [TimePayment] encouraged BrightKyte and Ellis to enter into the Software Use Agreement in exchange for a payment." *Id.* ¶ 35. Once BrightKyte fraudulently induced All Pieces Fit to enter into the Software Use Agreement, BrightKyte intended to assign the agreement to TimePayment in exchange for a lump-sum payment. *Id.* ¶ 36. TimePayment would then collect money from All Pieces Fit, even though both BrightKyte and TimePayment could not provide the promised software. *Id.* ¶ 37.

All Pieces Fit alleges that on November 6, 2023, November 17, 2023, and December 6, 2023, Haverty and TimePayment told All Pieces Fit that it would not need to make payments under the Software Use Agreement. *Id.* ¶ 21. Despite these representations by Haverty and also by Ellis, BrightKyte knowingly allowed TimePayment to collect money from the account holding All Pieces Fit's funds. *Id.* ¶ 22.

All Pieces Fit alleges that BrightKyte and TimePayment acted together in this conspiracy with knowing malice toward All Pieces Fit and other companies toward which they executed similar schemes. *Id.* ¶ 38.

## ANALYSIS

TimePayment seeks dismissal of All Pieces Fit's claim of conspiracy to commit fraud in Count I of the Amended Third Party Complaint/Counterclaim pursuant to Rule 12(b)(6) for failure to state a claim. Because this amended claim of conspiracy to commit fraud suffers from defects similar to those of the original claim, the Court grants the motion to dismiss Count I.

"A civil conspiracy is a combination of two or more persons who engage in concerted action to accomplish an unlawful purpose or to accomplish some lawful purpose by unlawful means." *Boyle v. Anderson Fire Fighters Ass'n Loc. 1262, AFL-CIO*, 497 N.E.2d 1073, 1079 (Ind. Ct. App. 1986) (citing *Indianapolis Horse Patrol, Inc. v. Ward*, 217 N.E.2d 626 (Ind.

6

1966)); *see Am. Heritage Banco, Inc. v. McNaughton*, 879 N.E.2d 1110, 1115 n.3 (Ind. Ct. App. 2008) (quoting *Huntington Mortg. Co. v. DeBrota*, 703 N.E.2d 160, 168 (Ind. Ct. App. 1998)). Under Indiana law, "there is no independent cause of action in tort based solely on the existence of a civil conspiracy." *Boyle*, 497 N.E.2d at 1079 (citing *Ward*, 217 N.E.2d 626); *see Am. Heritage Banco*, 879 N.E.2d at 1115 (citing *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1234 (Ind. 1994)). "Rather, the cause of action is for the damages that result from the conspiracy." *Boyle*, 497 N.E.2d at 1079 (citing *Ward*, 217 N.E.2d 626); *see Am. Heritage Banco*, 879 N.E.2d at 1115 n.3 (citing *Huntington Mortg. Co.*, 703 N.E.2d at 168); *K.M.K. v. A.K.*, 908 N.E.2d 658, 663–64 (Ind. Ct. App. 2009) ("Unlike criminal conspiracy, the gist of a civil conspiracy is not the unlawful agreement, but the damage resulting from that agreement." (cleaned up) (quoting *Allen v. Great Am. Res. Ins.*, 766 N.E.2d 1157, 1168 (Ind. 2002))). "Each participant in the conspiracy may be held responsible as a joint tortfeasor for damages caused by the wrongful or contemptuous acts regardless of the degree of active participation." *Boyle*, 497 N.E.2d at 1079 (cleaned up).

      Here, the underlying tort of "[f]raudulent inducement occurs when a party is induced through fraudulent misrepresentations to enter into a contract." *Reitenour v. M/I Homes of Ind., L.P.*, 239 N.E.3d 56, No. 23A-CT-3090, 2024 WL 3085306, at *2 (Ind. Ct. App. June 21, 2024) (quoting *Am.'s Directories, Inc. v. Stellhorn One Hour Photo, Inc.*, 833 N.E.2d 1059, 1068 (Ind. Ct. App. 2005)). A claim of fraudulent inducement requires proof of the same elements as a fraud claim: "(1) a material misrepresentation of past or existing fact which (2) was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) which proximately caused the injury or damage complained of." *Id.* (quoting *Lawyers Title Ins. v.*

*Pokraka*, 595 N.E.2d 244, 249 (Ind. 1992); citing *Massey v. Conseco Servs., LLC*, 879 N.E.2d 605, 611 (Ind. Ct. App. 2008)).

All Pieces Fit's conspiracy claim is subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b) because the factual allegations of the conspiracy claim sound in fraud. *See Borsellino v. Goldman Sachs Grp.*, 477 F.3d 502, 507 (7th Cir. 2007) (addressing an Illinois state law claim of civil conspiracy to commit fraud under Rule 9(b) because "Rule 9(b) applies to 'averments of fraud,' not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations"); *Sols. Team v. Oak St. Health, MSO, LLC*, No. 17-CV-1879, 2020 WL 5630468, at *12 (N.D. Ill. Sept. 21, 2020) (concluding that, because the civil conspiracy count sounded in fraud, Rule 9(b) applied and "the conspiracy must be pled with specificity" and finding that the complaint failed to "allege 'the who, what, when, where, and how' of the conspiracy to commit fraudulent inducement with the level of detail required by Rule 9(b)" because it "[said] almost nothing about agreements between any of the Defendants").

Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To meet this standard, a plaintiff must allege "the 'who, what, when, where, and how' of the alleged fraud." *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 401 (7th Cir. 2009) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). This includes "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *GE Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997) (cleaned up).

8

A plaintiff must provide more than conclusory allegations to satisfy Rule 9(b)'s requirement that circumstances of fraud be pleaded "with particularity." *Robin v. Arthur Young & Co.*, 915 F.2d 1120, 1127 (7th Cir. 1990) (quoting *DiLeo*, 901 F.2d at 627); *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) ("[P]laintiffs must use some means of injecting precision and some measure of substantiation into their allegations of fraud." (cleaned up)). "This heightened pleading requirement is a response to the great harm to the reputation of a business firm or other enterprise a fraud claim can do." *Borsellino*, 477 F.3d at 507.

Count I of the Amended Third Party Complaint/Counterclaim for conspiracy to commit fraud alleges that Jay Haverty (President and CEO of TimePayment) with TimePayment and Brian Ellis (manager of BrightKyte) with BrightKyte conspired to fraudulently induce All Pieces Fit to enter in the Software Use Agreement with BrightKyte, Am. Countercl. ¶ 34; Haverty and TimePayment "knew or should have known that BrightKyte could not provide the promised services, yet . . . encouraged BrightKyte and Ellis to enter into the Software Use Agreement in exchange for payment," *id.* ¶ 35; once BrightKyte fraudulently induced All Pieces Fit to enter into the Software Use Agreement, BrightKyte intended to assign the agreement to TimePayment in exchange for a lump-sum payment, *id.* ¶ 36; and TimePayment would then collect money from All Pieces Fit even though both BrightKyte and TimePayment could not provide the promised software, *id.* ¶ 37.

TimePayment argues that this repleaded conspiracy to commit fraud claim still fails to meet the heightened pleading requirements of Rule 9(b) as to the alleged agreement between TimePayment and BrightKyte to commit the fraud. The Court agrees. All Pieces Fit has not alleged with specificity the what, when, and where of any such agreement to commit fraud between Haverty at TimePayment and Ellis at BrightKyte or a basis for TimePayment to know

that BrightKyte could not provide the promised software. *See Borsellino*, 477 F.3d at 509 (finding a failure to allege civil conspiracy under Illinois law because "the complaint tells us nothing about the nature of the purported agreement to defraud the plaintiffs, such as when it was made or which individuals at Goldman Sachs arranged the conspiracy" and the "factual allegations as to Goldman Sachs are simply that it participated in the testing of [a software program] for SEC compliance and that it did not invest in [the program] until [the program's] principals had cut off business ties with [the plaintiff]"); *see also Zimmer, Inc. v. Stryker Corp.*, No. 3:14-CV-152, 2014 WL 3866454, at *11 (N.D. Ind. Aug. 6, 2014) ("[I]f [the plaintiff] proves a civil conspiracy in the commission of one of the other torts it has properly alleged, then Stovall and Stryker would both be responsible in damages for the actions of one another.").

First, the general conspiracy allegations in Paragraphs 18 and 34 of the Amended Counterclaim are not sufficiently specific. Paragraph 18 provides that "Ellis and BrightKyte conspired with [Haverty] to pay TimePayment for inducing companies such as [All Pieces Fit] to enter into Software Use Agreements," and Paragraph 34 provides that "Haverty and TimePayment and Ellis and BrightKyte conspired to fraudulently induce [All Pieces Fit] to enter into the Software Use Agreement." Countercl. ¶¶ 18, 34. Although All Pieces Fit now identifies Haverty as the individual on behalf of TimePayment participating in the alleged agreement, there are no factual allegations regarding any such agreement. And, as argued by TimePayment, Paragraph 18 alleges a facially legitimate business transaction, and Paragraph 34 is a bare allegation of the legal claim.

In addition, "[a]lthough states of mind may be pleaded generally under [Rule 9(b)], the rule requires plaintiffs to plead 'with particularity' any 'circumstances constituting fraud.'" *Robin*, 915 F.2d at 1127 (quoting Rule 9(b); citing *DiLeo*, 901 F.2d at 627). The allegations in Paragraph 35 that Haverty and TimePayment knew or should have known that BrightKyte could

10

not provide the software and in Paragraph 31 that TimePayment knew or should have known that All Pieces Fit never received the promised software are nothing more than "rote conclusions." *See id.* ("Assertions that [the defendant] had knowledge that the prospectus was false and misleading and that [the defendant] knowingly and intentionally aided and abetted the primary violators are nothing more than rote conclusions"). "[W]hile [TimePayment's] mental state need not be pleaded with particularity, 'the complaint must still afford a basis for believing that [All Pieces Fit] could prove scienter.'" *Id.* (quoting *DiLeo*, 901 F.2d at 629). All Pieces Fit fails to allege facts to explain how TimePayment would have this knowledge. *Compare id.* (finding "bare allegations" that the defendant "should have known that the prospectus was false and misleading also fail to allege scienter"), *with United States v. Molina Healthcare of Ill., Inc.*, 17 F.4th 732, 741–42 (7th Cir. 2021) (finding the allegations of fraudulent inducement sufficient to show that the defendant never intended to perform the promised act because they included details about statements made by the defendant's chief operating officer that "staff did not have the ability or licensure to render [the] services").

All Pieces Fit argues that it has alleged facts to show an agreement to commit fraud in paragraphs 18 and 19, which allege that Haverty at TimePayment and Ellis at BrightKyte "conspired . . . to pay TimePayment for inducing companies such as [All Pieces Fit] to enter Software Use Agreements," Am. Countercl. ¶ 18, and that Haverty and Boyle at TimePayment with Ellis at BrightKyte "ensured that TimePayment could collect under BrightKyte's software use agreement," *id.* ¶ 19. *See* Resp. Br. 5, ECF No. 60 (citing Am. Countercl. ¶¶ 18, 19). However, other than adding Haverty and Boyle's names, this is the same argument that failed to prevent dismissal of the original Counterclaim. As argued by TimePayment, these allegations simply describe the Master Purchase Agreement and the provision of the Software Use Agreement allowing for assignment of contractual benefits from BrightKyte to TimePayment.

Again, these appear to be allegations of a legitimate business transaction, and All Pieces Fit does not allege any facts to suggest otherwise. There are still no allegations describing the what, where, or when of an agreement to fraudulently induce All Pieces Fit to sign the Software Use Agreement. Likewise, All Pieces Fit's citation to paragraphs 36–39 of the Amended Counterclaim is unavailing because these allegations do not show an agreement to defraud.[4] Rather, these paragraphs allege that *BrightKyte* fraudulently induced All Pieces Fit to enter into the Software Use Agreement with the plan for BrightKyte to assign the agreement to TimePayment in exchange for a lump-sum payment and TimePayment's plan to collect the money from All Piece Fit. Again, the Master Agreement and the assignment clause of the Software Use Agreement are not allegations of an agreement to defraud based on knowledge that BrightKyte did not have the promised software.

Similarly, the new allegation that "[o]n November 6, 2023, November 7, 2023, and December 6, 2023, Haverty and TimePayment told [All Pieces Fit] it would not need to make payments under the Software Use agreement," *id.* ¶ 21, is not support for an agreement to fraudulently induce All Pieces Fit to enter into the Software Use Agreement because it describes events that occurred months after the execution of the Software Use Agreement. And the allegation that BrightKyte permitted TimePayment to collect money from the bank account set up for All Pieces Fit's benefit, despite the allegation that Ellis and Haverty told All Pieces Fit they did not need to make payments under the Software Use Agreement, is not evidence of an agreement prior to the execution of the Software Use Agreement to fraudulently induce All Pieces Fit to enter into the contract.

---

[4] All Pieces Fit's Response Brief incorrectly cites paragraphs 40–45 rather than paragraphs 34–39 of the Amended Counterclaim and also misquotes certain of those paragraphs. *Compare* Am. Countercl. ¶¶ 34–39, *with* Resp. Br. 6.

As in its response to the motion to dismiss the original Counterclaim, All Pieces Fit cites *United States ex rel. Mamalakis v. Anesthetix Management LLC*, 20 F.4th 295, 302–03 (7th Cir. 2021), for its finding that the plaintiff adequately pled allegations of fraud to satisfy Rule 9(b) where the plaintiff provided specific instances regarding the fraudulent practices. And as this Court explained in its prior opinion, the plaintiff in *Mamalakis* offered ten discrete, dated examples of the alleged medical billing fraud that were "detailed, identifying specific doctors and procedures and describing why each procedure should not have been billed as medically directed." *Id.* at 303. The *Mamalakis* court found that the "representative examples provide a particularized basis from which to plausibly infer that at least on these occasions, [the defendant] presented false claims to the government." *Id.* In contrast, All Pieces Fit has identified only the instance of alleged fraud perpetrated against it. The conclusory allegations of TimePayment's knowledge and intent do not satisfy the requirements that the agreement to defraud be pleaded with particularity. *See Robin*, 915 F.2d at 1127.

Finally, TimePayment argues that All Pieces Fit has failed to plead the "reliance" element of the fraudulent inducement claim, arguing that All Pieces Fit has not alleged that it relied on a representation of TimePayment when it signed the Software Use Agreement. However, the Amended Counterclaim is not alleging that All Pieces Fit relied on a representation of TimePayment to enter into the Software Use Agreement but relied on the representation by BrightKyte that BrightKyte had the software. *See* Am. Countercl. ¶¶ 12, 36. If All Pieces Fit had alleged facts to show an agreement between TimePayment and BrightKyte to fraudulently induce All Pieces to Fit to enter into the Software Use Agreement, then TimePayment would be liable for BrightKyte fraudulently inducing All Pieces Fit to enter into the Software Use Agreement. *See Boyle*, 497 N.E.2d at 1079 ("All those who aid and abet in the commission of an intentional tort are equally liable with the party directly committing it.").

While All Pieces Fit has alleged facts to show that TimePayment and BrightKyte acted in concert to enter into the Master Purchase Agreement—a facially legitimate business transaction, All Pieces Fit has not alleged facts with the requisite specificity under Rule 9(b) to state a claim that TimePayment acted in concert with Ellis and BrightKyte to fraudulently induce All Piece Fit to enter into the Software Use Agreement. Thus, the Court grants the motion to dismiss the conspiracy to commit fraud claim in Count I of the Amended Third Party Complaint/Counterclaim.

## CONCLUSION

For the reasons stated above, the Court hereby GRANTS Counter Defendant TimePayment Corp.'s Motion to Dismiss Amended Counterclaim [ECF No. 57], dismissing with prejudice the conspiracy to commit fraud claim in Count I of the Amended Third Party Complaint/Counterclaim.

This case remains pending on Plaintiff TimePayment's Complaint against All Pieces Fit and on All Pieces Fit's Amended Third Party Complaint against BrightKyte and Ellis.

SO ORDERED on October 14, 2025.

      s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT